CASE 50.—PERSONAL INJURY ACTION BY OSCAR ROBARDS,
  BY HIS NEXT FRIEND W. P. ROBARDS, AGAINST
  P. BANNON SEWER PIPE CO., &C.—November 17.

## Robards v. P. Bannon Sewer Pipe Co.

Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

EMMET FIELD, Judge.

From a judgment sustaining demurrer to original and amended petitions, plaintiff appeals.—Reversed.

1.  Master and Servant—Liability for Acts of Servant—Injury to Third Person—Scope of Servant's Authority.—The mere employment of a watchman to guard property did not authorize him to shoot a trespasser who was running away from the premises.

2.  Pleading — Construction — Substituted Pleading. — Where an amended and substituted petition is filed in lieu of the original petition and its amendment, a purpose is indicated to rely upon the amended and substituted petition as alone stating the cause of action, and whether it is demurrable depends upon its allegations alone; the rule that a pleading and its several amendments are ordinarily to be considered together in determining whether a cause of action is stated not being applicable.

3.  Master and Servant—Injury to Third Person—Liability for Servant's Act—Scope of Employment.—A master is liable for the acts of his servant only when the servant acts within the scope of his authority.

4.  Master and Servant—Scope of Servant's Employment—Consent of Master to Servant's Acts—"Course of Employment"—"Scope of Authority."—The terms "course of employment" and "scope of authority," as applied to a servant's acts, are not susceptible of accurate definition, since what acts are within the scope of the servant's employment so as to render the master liable therefor must be gathered from the sur-

rounding circumstances, the master's liability depending upon his consent, express or implied, to the servant's acts.

5. Master and Servant—Injury to Third Person—Liability of Master—Scope of Servant's Authority.—Where authority is conferred to act for another, without special limitation it carries with it by implication, authority to do all things necessary to its execution, and hence where a servant's employment involves the exercise of discretion, or the use of force towards a third person, the exercise of discretion or use of force becomes, as to third persons, the discretion and act of the master, though the servant abused his authority and disregarded the master's private instructions, if he was acting within the general scope of his employment.

6 Master and Servant — Injury to Third Person — Liability of Master—Scope of Servant's Authority.—Where it is doubtful whether a servant injuring a third person was acting within the general scope of his authority, the doubt will be resolved against the master, because he set the servant in motion.

7. Master and Servant—Liability of Master—Watchman Shooting Third Person—Scope of Employment—Question for Jury.— If the master employs a watchman and authorizes him to use firearms in his discretion, and he shoots a third person near the premises, he is not as a matter of law acting without the scope of his employment.

POPHAM & WEBSTER for appellant.

CHARLES B. TAYLOR and KOHN, BAIRD, SLOSS & KOHN for appellee.

OPINION OF HE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Oscar Robards, suing by his next friend, W. P. Robards, instituted this action against George Vanetta and the P. Bannon Sewer Pipe Company to recover damages for personal injuries inflicted by George Vanetta while acting as watchman for the P. Bannon Sewer Pipe Company. The trial court sustained the P. Bannon Sewer Pipe Company's demurrer to plaintiff's petition and amended petition, and

also to his substituted and amended petition; and the propriety of this ruling is before us for determination.

That portion of the petition necessary to be considered is as follows: "He states that the defendant P. Bannon Sewer Pipe Company is a corporation, created and existing by virtue of law, and as such has power to sue and be sued in its corporate name, to operate a general brickyard and brick manufacturing establishment in the city of Louisville, and to employ night watchmen and other persons to protect its property and conduct its said business. He states that the defendant George Vanetta was at all of the times hereinafter set out in the employ of defendant P. Bannon Sewer Pipe Company as its night watchman in said brick establishment, and as such it was his duty to said company to protect from injury its said properties during the nighttime. He states that on or about the 8th of December, 1907, this infant plaintiff was passing at and close to said brick establishment in said city, when he approached said establishment, and was then and there mistaken for a wrongdoer, burglar, or other law-breaker by the defendant P. Bannon Sewer Pipe Company by and through its agent and night watchman, defendant George Vanetta, who suspected said infant of attempting to destroy or steal said property. He states that he was at said time and place acting in the peace, was guilty of no wrong or violation of law, and that the defendant P. Bannon Sewer Pipe Company by and through its agent and night watchman, Vanetta, and the defendant Vanetta, severally and jointly, and with gross negligence, culpable carelessness, and recklessness, then and there set upon him, this infant, and he was then and there shot by said Vanetta with a firearm containing lead bullets or other hard substance, from

the infliction of said gunshot wounds said Vanetta this infant plaintiff was caused to and did, does and will in the future, suffer great mental and physical pain, has become and is obligated for great doctor's bills and expenses on account thereof, and his power to earn money has been materially lessened and impaired permanently, by reason of all of which he has been damaged in the sum of at least $25,000. He states that the defendant Vanetta was at said time and place acting as the night watchman, agent, and employe of his co-defendant P. Bannon Sewer Pipe Company, and as such it was his duty to protect the property of said corporation, and was in the course of his employment as such at the time and place of the disaster and injury to this infant plaintiff hereinbefore set out by the infliction of the gunshot wound hereinbefore described." The demurrer of the P. Bannon Sewer Pipe Company to the petition being sustained, plaintiff amended his petition as follows: "For amendment to his original petition against defendant P. Bannon Sewer Pipe Company, plaintiff says that on the night complained of in his original petition he entered the property of defendant P. Bannon Sewer Pipe Company for the purpose of getting warm; that defendant George Vanetta, agent for the defendant P. Bannon Sewer Pipe Company, then in charge of said property. directed plaintiff to leave said property; that as plaintiff was running away from said property defendant P. Bannon Sewer Pipe Company by its said agent in charge thereof negligently shot plaintiff as set out in his original petition." The demurrer of the P. Bannon Sewer Pipe Company being sustained to the petition as amended, the plaintiff filed an amended and substituted petition containing the following allegations: "That defendant P. Bannon Sew-

er Pipe Company is a corporation, created and existing by virtue of law, and as such has power to sue and be sued in its corporate name, to operate and control a general brickyard and brick manufacturing establisment in the city of Louisville, and to employ night watchmen and other persons to protect its property and conduct its business; that defendant George Vanetta was at all of the times hereinafter set out in the employ of defendant P. Bannon Sewer Pipe Company as its night watchman in said brick establishment, and as such he was authorized by said company to carry firearms to protect said property from injury during the nighttime, and was authorized to use such firearms whenever, in his judgment, it seemed necessary or advisable; that on or about December 8, 1907, while defendant Vanetta was acting as night watchman for defendant P. Bannon Sewer Pipe Company as hereinbefore set out, upon its said premises, and while said Oscar Robards was on or near said premises, with gross negligence he wrongly adjudged that said Oscar Robards was doing or attempting to do wrong to the property of defendant P. Bannon Sewer Pipe Company, and with gross negligence adjudged that it was necessary or advisable to fire at said Oscar Robards to properly protect said property; that thereupon said Vanetta fired leaden bullets or other hard substance at said Oscar Robards, wounding and injuring said Oscar Robards, whereby he was and will be caused to suffer great mental and physical pain, has become obligated for doctor's bills and expenses on account of said injuries, and his power to earn money has been materially and permanently lessened and impaired, all to his damage in the sum of $25,000.'' We are inclined to the opinion that the court ruled properly in sustaining the demurrer of the P. Bannon Sewer Pipe

Bobards v. P. Bannon Sewer Pipe Co.

Company to plaintiff's original and amended petition, upon the ground that the mere employment of a watchman to guard the property did not involve the authority to shoot the plaintiff under the circumstances described. Belt R. R. Co. v. Banicki, 102 Ill. App. 642.

Counsel for appellee insists that the court's action in sustaining the defendant's demurrer to the amended and substituted petition was also proper, for the reason that the pleadings are to be construed all together and most strongly against the pleader; that under this rule the plaintiff is bound by the allegation that he was actually running away from the property when he was shot by Vanetta. That being the case, it is insisted that under the rule laid down in the case of Golden v. Newbrand, 52 Iowa 59, 2 N. W. 537, 35 Am. Rep. 257, the act of Vanetta was not within the scope of his employment. While it may be the rule that a pleading and the several amendments thereto are ordinarily to be considered all together for the purpose of determining whether or not a cause of action is stated, we are of opiinon that, where a party files an amended and substituted petition in lieu of the original petition and its amendment, he thereby indicates a purpose to rely upon the amended and substituted petition as alone setting forth his cause of action. The question whether or not the latter pleading is demurrable depends altogether upon the allegations which it alone contains.

The question, then, is whether or not the allegation that the plaintiff was "on or near said premises," being considered from the standpoint of the weaker term (that is, that he was merely near said premises), is conclusive evidence of the fact that Vanetta at the time of the shooting was not acting within the scope of his employment.

vol 130—13

The question of the liability of the master for the acts of his servant depends altogether upon the fact of whether or not the servant was acting within the scope of his employment. The terms "course of employment" and "scope of the authority" are not susceptible of accurate definition. What acts are within the scope of the employment can be determined by no fixed rule; the authority from the master generally being gatherable from the surrounding circumstances. The master is liable only for the authorized acts of the servant, and the root of his liability for the servant's acts is his consent, express or implied, thereto. When the master is to be considered as having authorized the wrongful act of the servant, so as to make him liable for his misconduct, is the point of difficulty. When authority is conferred to act for another without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and, when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and when exercised becomes, as to third persons, the discretion and act of the master, and this although the servant departed from the private instructions of the master, provided he was engaged at the time in doing his master's business, and was acting within the general scope of his employment. It is not the test of the master's liability for the wrongful act of the servant from which injury to a third person has resulted that he expressly authorized the particuuar act and conduct which occasioned it. In most cases where the master has been held liable for the negligent or tortious act of the servant the servant acted, not only without express authority to do the wrong, but in violation of his duty to the mas-

ter. It is in general sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another. Rounds v. Del., Lack. & West. R. R. Co., 64 N. Y. 129, 21 Am. Rep. 597. Furthermore, the law under such circumstances will not undertake to make any nice distinctions fixing with precision the line that separates the act of the servant from the act of the individual. When there is doubt, it will be resolved against the master, upon the ground that he set in motion the servant who committed the wrong. South Cov. & Cincinnati Street Ry. Co. v. Cleveland, 100 S. W. 283, 30 Ky. Law Rep. 1072, 11 L. R. A. (N. S.) 853; Thompson on Negligence, sections 554, 563; New Ellerslie Fishing Club v. Stewart, 123 Ky. 8, 93 S. W. 598, 29 Ky. Law Rep. 414, 9 L. R. A. (N. S.) 475.

Let us, then, apply these principles to the facts as set out in plaintiff's amended and substituted petition.

That pleading alleges that George Vanetta, the watchman who shot plaintiff, was the night watchman of the P. Bannon Sewer Pipe Company, and, as such, he was authorized by said company to carry firearms to protect said property from injury during the nighttime, and was authorized to use said firearms whenever in his judgment it seemed necessary or advisable; that on the occasion in question, and while Vanetta was acting as such night watchman for the P. Bannon Sewer Pipe Company, and while the plaintiff was "on or near said premises," he, with gross negligence, wrongly adjudged that the plaintiff was doing, or attempting to do, wrong to the property of the defendont P. Bannon Sewer Pipe Company, and with gross negligence adjudged it was necessary to fire at said Oscar Robards, in order to protect said property; and that he did actually fire at and wound the plaintiff. Where the master employes a watchman and authorizes him to use firearms in his discretion, we can not hold as a matter of law that the act of the watchman in shooting a third party who, at the time, was only near the premises, is conclusive evidence of the fact that the watchman was not acting within the scope of his employment. The master can not escape liability for the acts of his servant when he has given the servant authority to act and the discretion when to act, and the servant negligently acts at a time when such action was not necessary. The statements of this pleading may be overcome when all the surrounding facts and circumstances are made known; but taken by themselves, as we must do for the purposes of the question before us, they show that the act of Vanetta was within the scope of his employment.

For the reasons given, the judgment is reversed and cause remanded, with directions to overrule the

demurrer of the P. Bannon Sewer Pipe Company to the amended and substituted petition.

---

CASE 51.—ATTACHMENT OF LAND BY THE FARMERS & DROVERS BANK AND OTHERS, THE ADMINISTRATOR OF S. S. MEDDIS, BURTON-WHAYNE CO., PURCHASED THE LAND AT COMMISSIONER'S SALE AND FILED EXCEPTIONS WHICH WERE OVERRULED AND IT APPEALS.—November 17.