## Keel v. Steele Coal Company, et al.

(Decided February 20, 1925.)

## Appeal from Pike Circuit Court.

1. False Imprisonment—Employe's Evidence Against Employer Held Insufficient for Submission to Jury.—In action for false arrest against employer, whose superintendent had ordered plaintiff back to work after plaintiff had quit and had left employer's premises, evidence from which it was apparent that plaintiff had gone back to work of his own accord and free will, held insufficient for submission of case to jury.
2. Master and Servant—Direction of Verdict for Defendant Superintendent Charged with Assaulting Employe Held Error.—In employe's action against employer's superintendent for assault, in which there was uncontradicted evidence that superintendent had knocked employe down, direction of verdict for superintendent held error.
3. Master and Servant—Employer Held Not Liable for Assualt by Superintendent on Employe.—Employer held not liable for superintendent's assault on employe, on employe's attempt to quit without payment of debt due superintendent, since in making such assault superintendent was not acting as employer's agent, and was not acting in the course of his employment.

ROSCOE VANOVER and O. A. STUMP for appellant.

PICKLESIMER & STEELE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming as to appellee, the Steele Coal Company, and reversing as to appellee, Fred Stone.

The appellant sued the appellees herein for assault and false arrest. At the conclusion of his proof, the court gave a peremptory instruction to the jury to find for the appellees, and the propriety of this ruling is the only question here on appeal.

The liability, if any, of the appellee, the Steele Coal Company, rests on the fact that its co-appellee, Fred Stone, in doing the acts complained of, acted as its agent or servant, for it and in the course of his employment.

Passing the question of whether or not the pleadings of appellant were sufficient as to the appellee coal company, we find the only evidence appellant produced to sustain his cause of action against both appellees was, in substance, that appellee Stone was the superintendent of the appellee coal company, for which appellant was working; that on September, 22, 1922, appellant quit his em-

ployment and left the premises of the coal company; that while he was waiting at the station for his train, the following occurred:

"A. I quit and started home; I went down to the station and I had bought my ticket to go home and then in came Fred Stone and he said where are you going, and I said, 'I am going home,' and he said, 'You had better go back up there and go to work,' and he went with me up the road.

"Q. Go on and tell what happened? A. Well, when he started up the road with me we had not gone over 100 feet up the track when he hit me and knocked me down and he said, 'You owe me some and you have got to pay it,' and I said, 'If I owe it I want to pay it,' and then he taken me up to Squire Pruitt's and called for a warrant and I told him that if I owed anything that I was ready to pay it.

"Q. Did you work any more after that time? A. Yes, sir, seven or eight days.

"Q. Have any further difficulty with the defendant, Fred Stone, down there? A. I came back that evening and went to work and he came along and Tom Irick was with him and he told him to stay there that night and watch me and to turn his time in and that he would take it out of my pay.

"Q. What did he say about taking Tom Irick's time out of your wages? A. Said he was going to do that.

"Q. Did he stay there on that night? A. Yes, sir.

"Q. State whether or not he carried arms on that occasion? A. No, sir; the next morning he said that he was just going to let me go and if I would not leave he would not bother me.

"Q. While you were in the depot how long had you been there before the defendant, Fred Stone, came there and got you? A. I had got my ticket.

"Q. When he came what did he say? A. Said 'What do you mean?' He said, 'Go back up there and go to work.' I started up the road and he struck me and knocked me down, and for nothing.

"Q. What effect did that lick have on you? A. I did not know anything until I was up in the power house.

"Q. Did you go on your own accord when you started back to work? A. He told me I had better go back to work and I just went back."

Appellant also produced one other witness who testified that appellee, Stone, knocked appellant down.

From this statement of the evidence, it is manifest that appellant utterly failed to make out a case of false arrest against either appellee, for it is apparent that appellant went back to work of his own free will and accord. As to the assault, however, it is equally manifest that appellant did make out a case against appellee, Stone, for the record stands uncontradicted that the latter knocked the appellant down. However, appellant fails to show that in doing so appellee was acting in any way whatsoever as the agent or servant of appellee coal company, or for it, or in the course of his employment with it.

Therefore, insofar as the court instructed the jury peremptorily to find for appellee coal company, its judgment is correct and is affirmed. Although appellant failed to make out a case of false arrest against appellee, Stone, he did prove a case of assault, and the court erred in failing to submit this matter to the jury. As to Stone, the judgment of the lower court is erroneous and is reversed with directions to grant appellant a new trial against appellee, Stone, in accordance with this opinion.

Judgment affirmed as to appellee, the Steele Coal Company.

Judgment reversed as to appellee, Fred Stone.