## John v. Lococo.

(Decided Dec. 4, 1934.)

608

RICHARDSON & RICHARDSON and JAS. P. BROWN for appellant.

HAGAN & HAGAN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Mary John, a girl 16 years of age, in the afternoon of the 28th of November, 1931, was injured while walking on the south side of Jefferson street, at Brook and Jefferson, about five doors from Vincent Lococo's place of business. A number of boys, with oranges in their hands, came running from the direction of Lococo's place of business, and, in order not to be knocked down by them—they were running fast—she moved to the side of the building to get out of their way. They had obtained the oranges on the sidewalk out of a barrel at Lococo's. They were the property of Lococo, and had been taken without his knowledge or consent.

While Mary John was standing by the side of a building, Messex, an employee of Lococo, came running along the street, "hollering: 'Stop, you thief, stop,'" and threw a "box opener" which struck Mary John on the leg; he immediately exclaimed: "My God, what have I done," and went to her and administered "first aid" with his handkerchief.

Messex, the employee of Lococo, delivered by truck the merchandise sold by Lococo to his customers, and, when not so engaged, it was a part of his duty to prepare the same for delivery and also sell to customers. At the time the transaction occurred, Lococo was in his place of business, and it is not shown that he had any knowledge of the actions of the boys or Messex, or of the presence on the street of Mary John. The evidence does not disclose where, or at what, Messex was engaged at the time the boys by stealth obtained the oranges.

Claiming she had sustained mental and physical pain and suffering, Mary John by her next friend instituted this action against Lococo to recover therefor $10,000. The basis of her cause of action is that Messex, at the time he inflicted the injury on her leg, was the "servant, agent and employee" of Lococo, "then and there in line of his duty and scope and course of his employment" and "did with great carelessness and gross negligence" "toss" the "box opener" against her leg, thereby injuring her. Lococo's defenses are a denial and a plea of contributory negligence.

At the conclusion of the evidence of Mary John, the court directed a verdict for Lococo; judgment was accordingly entered and an appeal granted to this court.

The sole question to be determined is the correctness of the giving of the peremptory instruction.

To sustain her contention, she cites to us: Robards v. P. Bannon Sewer Pipe Co., 130 Ky. 380, 113 S. W. 429, 431, 18 L. R. A. (N. S.) 923, 132 Am. St. Rep. 394; 39 C. J. pp. 1283, 1285, 1287, and 1292; and Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52, 56.

The principles therein laid down are not disputed. Their application to the facts presented is the controverted and debated question, and must be determined when passing on the propriety of giving the peremptory instruction.

In the Robards Case it is stated:

"The terms 'course of employment' and 'scope of the authority' are not susceptible of accurate definition. What acts are within the scope of the employment can be determined by no fixed rule; the authority from the master generally being gatherable from the surrounding circumstances."

It is not debatable that, "so long as the servant has done some act in the furtherance of his master's business, he will be regarded as acting in the scope of his employment although he may have exceeded his authority." And "the master who * * * commits to [the servant] * * * the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and

the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another.''

It is not necessary to hold the master liable that the servant should have authority to do the particular act which produced the injury sustained; all that is necessary is that the act be done in the course of employment and is either expressly or impliedly authorized by the master, even though the servant inflicts unnecessary injury.

Another equally well-known principle is:

> ''It is not, as a general rule, within the scope of the servant's employment to commit an assault upon a third person and the master is not liable for such an assault, though committed while the servant was about his master's business.''

3 Cooley on Torts, sec. 396, p. 78. Illustrative of this principle are Guille v. Campbell, 200 Pa. 119, 49 A. 938, 55 L. R. A. 111, 86 Am. St. Rep. 705; Dolan v. Hubinger, 109 Iowa, 408, 80 N. W. 514; Rahmel v. Lehndorff, 142 Cal. 681, 76 P. 659, 65 L. R. A. 88, 100 Am. St. Rep. 154.

The root of the master's liability for the servant's act is the master's consent to the act, which must be expressed or implied, either of which may be established by the verbal testimony of witnesses or the established circumstances or both. As was said in the Robards Case:

> ''It is in general sufficient to make the master responsible that he gave to the servant an authority, or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment. The master in that case will be deemed to have consented to and authorized the act of the servant, and he will not be excused from liability, although the servant abused his authority, or was reckless in the performance of his duty, or inflicted an unnecessary injury in executing his master's orders.''

See Central Consumers Co. v. Booher, 107 S. W. 198, 32 Ky. Law Rep. 794; Lyttle v. Harlan Town Coal Co., 167 Ky. 345, 180 S. W. 519; South Covington & Cincinnati Street R. Co. v. Cleveland, 100 S. W. 283, 30 Ky.

Law Rep. 1072, 11 L. R. A. (N. S.) 853; New Ellerslie Fishing Club v. Stewart, 123 Ky. 8, 93 S. W. 598, 29 Ky. Law Rep. 414, 9 L. R. A. (N. S.) 475.

"The master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only arise when the act done is within the real or apparent scope of the master's business. * * * The reason for the rule is that beyond the scope of his employment a servant is as much a stranger to his master as a third person."

Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790, 791. Illustrative of these principles are: Craig's Adm'x v. Kentucky Utilities Co., 183 Ky. 274, 209 S. W. 33; Williams' Adm'r v. Portsmouth By-Product Coke Co., 213 Ky. 96, 280 S. W. 479; Leslie v. Consolidated Coal Co., 172 Ky. 121, 188 S. W. 1083, L. R. A. 1918A, 1051; Guy W. Smith & Sons v. Dawson, 206 Ky. 107, 266 S. W. 926; Keel v. Steele Coal Co., 207 Ky. 431, 269 S. W. 531; Tyler v. Stephan's Adm'x, 163 Ky. 770, 174 S. W. 790; Rahmel v. Lehndorff, supra; Muller v. Hillenbrand, 227 N. Y. 448, 125 N. E. 808, 8 A. L. R. 1455; Salvatore Ciarmataro, Adm'r v. Carl J. Adams, 275 Mass. 521, 176 N. E. 610, 75 A. L. R. 1171; Brooks et al. v. Gray-Von Allmen Sanitary Milk Co., 211 Ky. 462, 277 S. W. 816, 46 A. L. R. 1207; Wells v. Henderson Land, etc., Co., 200 Ala. 262, 76 So. 28, L. R. A. 1918A, 115.

The master is liable for an assault of his servant on a third person, if the servant was doing what he was employed to do at the time of the injury; that is, the act of the servant was or is reasonably incident to the service the servant was employed to render. The master is only liable where his duty to a third party is violated by the servant's conduct in attempting to perform the service. In Richard v. Amoskeag Mfg. Co., 79 N. H. 380, 109 A. 88, 91, 8 A. L. R. 1426, this rule is stated, and, following it, the court said:

"If the act causing the injury is connected with or grows out of the service the servant is doing, the latter is within the scope of his employment and the master is liable. If therefore the service may reasonably require the exercise of force, under some circumstances force is authorized, and the master may be liable for its excessive or unreasonable use, upon the ground that the servant was

within the scope of his employment, which has naturally resulted in injury to another, to whom the master owed the duty of abstaining from unnecessary violence. * * * The master's liability rests on the theory that, having authorized the use of reasonable force as a means for the accomplishment of the service, he is responsible for its negligent or willful abuse by the servant. He is responsible, not because the use of force was an incident of the service but because its abuse caused the injury.''

The master's liability in this class of cases rests upon the familiar principle drawn from the law of agency and on the ancient rule of ''respondeat superior.'' The general rule deducible from the authorities may be stated thus: If the assault of a servant of a third person is done in the execution of the authority given him by the master and for the purpose of performing what he was directed to do, the master is responsible whether the wrong done was occasioned by a wanton, willful purpose, or to accomplish his business in an unlawful manner, but, if the servant commits a wrongful act without authority, and not for the purpose of executing the orders or doing the work of his master, the latter is not responsible therefor.

Also, ''where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, the doubt will be resolved against the master because he set the servant in motion.'' Ashland Coca Cola Bottling Co. v. Ellison, supra.

If these principles were as easy of application as they are of statement, we would have little difficulty; but, like many other simple and plain principles, their application to concrete facts is sometimes very difficult. If they applied alike to every state of facts, their application would be an easy task.

The acts of Messex in chasing the boys and throwing the ''box opener,'' and thereby injuring Mary John, were wholly outside of any authority, either expressed or implied, delegated to him by Lococo. He was not at the time protecting Lococo's property against a trespass then being committed, but was on his own account attempting to punish the trespassing boys for the previous taking of the property of his master. His act in throwing the ''box opener'' did not spring from, and had no connection with his duties as clerk or truck

driver; therefore Lococo is not responsible therefor. Brown v. Boston Ice Co., 178 Mass. 108, 59 N. E. 644, 86 Am. St. Rep. 469; Salvatore Ciarmataro, Adm'r, v. Carl J. Adams, supra; Western Union Tel. Co. v. Hill (C. C. A.) 67 F. (2d) 487; Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 10 L. R. A. (N. S.) 653; Evers v. Krouse, 70 N. J. Law, 653, 58 A. 181, 66 L. R. A. 592; Cooley on Torts (4th Ed.) secs. 391 and 396; Priest v. F. W. Woolworth Five & Ten Cents Store (Mo. App.) 62 S. W. (2d) 926; Tshudy v. Hubbs Stores Corp., 310 Pa. 285, 165 A. 238; Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743; Bearman v. So. Bell Tel. & Tel. Co., 17 La. App. 89, 134 So. 787; Sturgis v. Kansas City Rys. Co. (Mo. App.) 228 S. W. 861; Zucker v. Lannin Realty Co., Inc., et al., 217 App. Div. 487, 217 N. Y. S. 65; Daniel v. Excelsior Auto Co. et al., 31 Ga. App. 621, 121 S. E. 692.

It is apparent it is our conclusion the peremptory instruction was properly given.

Wherefore the judgment is affirmed.